# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### ASHEVILLE DIVISION
### 1:11cv159

| | | |
|---|---|---|
| KIMBERLY S. SISK, Individually and as Mother and Natural Guardian of S.A.S., a Minor, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | MEMORANDUM AND RECOMMENDATION |
| ABBOTT LABORATORIES, and Illinois Corporation, | ) ) ) | |
| Defendant. | ) ) | |
| _____ | ) | |

Pending before the Court is Defendant's Motion to Dismiss [# 77]. Several weeks after his birth, Plaintiff's minor son developed meningitis, which resulted in serious brain damage. Plaintiff contends that her son developed meningitis as the result of consuming a powered infant formula manufactured by Defendant that was contaminated with a bacteria. Accordingly, Plaintiff brought this action for negligence, breach of express warranties, breach of implied warranty, and unfair or deceptive trade practices. Defendant now moves to dismiss the Second Amended Complaint. The Court **RECOMMENDS** that the District Court **GRANT in part** and **DENY in part** the Motion to Dismiss [# 77].

## I.    Background

Plaintiff and her minor son ("S.A.S.") are residents of North Carolina.  (Pl.'s Second Am. Compl. ¶ 1.)  Plaintiff gave birth to S.A.S. on October 19, 2004.  (Id. ¶ 7.)  S.A.S. was a healthy newborn with a normal immune system when he was discharged from the hospital the next day.  (Id. ¶ 8.)  Defendant Abbott Laboratories is an Illinois company involved in the business of manufacturing, selling, and marketing products, including Similac Advance powered infant formula, to the public.  (Id. ¶¶ 2, 4, 22.)

When the hospital discharged S.A.S., it gave Plaintiff a can of Similac Advance powered infant formula and ten single packets of Similac Advance powered infant formula.  (Id.  ¶¶ 4, 9.)   In addition, S.A.S.'s pediatrician gave Plaintiff another ten single packets of Defendant's powered infant formula.  (Id. ¶ 9.)   Defendant supplied gift bags and free powered infant formula to the hospital for free.   Similarly, Defendant supplied free powered infant formula to the pediatrician for free.   (Id.)  By facilitating the distribution of these free samples to new mother's such as Plaintiff, Defendant ensured that its powered infant formula would be fed to infants and neonates.  (Id.  ¶ 52.)

After leaving the hospital, Plaintiff fed S.A.S. from the can of powered infant formula and the individual packets she received from the hospital and her

pediatrician.  (Id. ¶ 10.)  Plaintiff did not feed S.A.S. any other powered infant formula during the relevant time period.  (Id.)  Before she fed S.A.S., Plaintiff sterilized the bottle and added distilled water to the powered infant formula.  (Id.)  Plaintiff poured any unused formula into the left side of a double sink in her kitchen.  (Id.)  Plaintiff contends that she used the powered infant formula in the manner intended by Defendant.  (Id. ¶ 18.)

When S.A.S. began showing signs of a possible infection on November 12, 2004, Plaintiff took him to the emergency room where he was diagnosed with neonatal Enterobater sakazakii meningitis.  (Id. ¶ 12.)  As a result of the meningitis, S.A.S. suffered severe brain damage.  (Id.  ¶¶ 46-48.)  Plaintiff alleges that every case of neonatal Enterobater sakazakii meningitis documented by the Centers for Disease Control and Prevention ("CDC") with one exception was the result of the consumption of powered infant formula contaminated with Enterobater sakazakii.  (Id. ¶¶ 23-24.)  In contrast, liquid infant formulas, which are sterile, are not contaminated with Enterobater sakazakii and have no known association with neonatal Enterobater sakazakii meningitis.  (Id.  ¶¶ 46-48.)

Subsequently, the U.S. Food and Drug Administration ("FDA") collected samples from the side of the sink where Plaintiff poured the unused powered infant formula she fed S.A.S.  (Id. ¶ 13.)  The samples from the sink showed the presence

of Enterobater sakazakii that matched the strain of Enterobater sakazakii present in S.A.S. (Id.) The FDA also tested three of the remaining unopened packets of the powered infant formula, as well as several packets the FDA obtained from the pediatrician. (Id. ¶ 14.) All of these packets were negative for the presence of Enterobater sakazakii. (Id.)

Plaintiff contends that the source of Enterobater sakazakii that caused S.A.S.'s meningitis was the powered infant formula manufactured by Defendant. (Id. ¶¶ 25, 32.) The Enterobater sakazakii originated from a bacteria colony or its progeny that contaminated either Defendant's manufacturing facility or its powered infant formula prior to distribution. (Id. ¶ 26.) The Second Amended Complaint alleges that Defendant's powered infant formula:

> was not biocidally treated in its end-use containers, storage occurred in areas without climate-control which allowed condensation that permitted Enterobater sakazakii to grow to unacceptable levels and manufacturing and storage facilities were not kept sufficiently clean.

(Id. ¶ 36.) In addition, the Second Amended Complaint alleges that Defendant could have avoided the risk of contamination during the manufacturing process by wet mixing, as opposed to dry blending, and pasteurizing all the ingredients. (Id. ¶ 38.) Finally, the Second Amended Complaint alleges that the cleaning and testing protocols used by Defendant at its manufacturing facility are inadequate to prevent the bacteria from contaminating its finished product. (Id. ¶¶ 39-42.)

Although Defendant knew prior to October 2004 that its powered infant formula was not sterile and might contain Enterobater sakazakii (Id. ¶ 53), the ordinary consumer would not expect Defendant's powered infant formula to contain this bacteria  (Id. ¶ 17).  Neither the can nor the single packets Plaintiff received contained any limitations, qualifications, or warnings related to the use of the product; the labels did not advise the consumer that the product was not sterile, that it might contain the bacteria Enterobater sakazakii, or that the immune system of a newborn infant is not strong enough to combat an Enterobater sakazakii infection.  (Id. ¶¶ 17, 56-57.)   Plaintiff contends that if the label on Defendant's powered infant formula stated that the product was not suitable for an infant under twenty-eight days, that the product might contain a harmful bacteria, that the product was not sterile, or that liquid formula was safer for an infant, Plaintiff would not have fed S.A.S. the powered infant formula.  (Id. ¶¶ 11, 21.)  Instead, Plaintiff would have used either liquid or concentrated infant formula.  (Id. ¶ 48.)

The Second Amended Complaint also alleges that Defendant made false and misleading statements in its advertisements for its powered infant formula.  (Id. ¶¶ 111-19.)  Specifically, the advertisements stated that the product was safe for neonates and promoted the healthy development of the immune system for neonates.  (Id. ¶ 114.)  The Second Amended Complaint alleges that these claims

were false and misleading because Defendant knew at the time that its product was not safe for neonates because it might contain bacteria that could seriously injure a neonate.  (Id. ¶¶ 53, 119.)

Plaintiff then brought this action for negligence, breach of express warranties, breach of implied warranty, and unfair or deceptive trade practices. Defendant moved to dismiss the Second Amended Complaint in its entirety. Defendant's motion is now properly before the Court for a Memorandum and Recommendation to the District Court.

## II.  Legal Standard

The central issue for resolving a Rule 12(b)(6) motion is whether the complaint states a plausible claim for relief.  See Francis v. Giacomelli, 588 F.3d 186, 189 (4th Cir. 2009).  In considering a defendant's motion to dismiss, the Court accepts the allegations in the complaint as true and construes them in the light most favorable to plaintiff.  Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 253 (4th Cir. 2009); Giacomelli, 588 F.3d at 190-92.  Although the Court accepts well-pled facts as true, it is not required to accept "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement . . . ."  Consumeraffairs.com, 591 F.3d at 255; see also Giacomelli, 588 F.3d at 189.

The complaint need not contain "detailed factual allegations," but must contain sufficient factual allegations to suggest the required elements of a cause of action. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964-65 (2007); see also Consumeraffairs.com, 591 F.3d at 256. "[A] formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555, 127 S. Ct. at 1965. Nor will mere labels and legal conclusions suffice. Id. Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. ____, 129 S. Ct. 1937, 1949 (2009).

The complaint is required to contain "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570, 127 S. Ct. at 1974; see also Consumeraffairs.com, 591 F.3d at 255. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. ____, 129 S. Ct. at 1949; see also Consumeraffairs.com, 591 F.3d at 255. The mere possibility that the defendants acted unlawfully is not sufficient for a claim to survive a motion to dismiss. Consumeraffairs.com, 591 F.3d at 256; Giacomelli, 588 F.3d at 193. Ultimately, the well-pled factual allegations must move a plaintiff's claims from possible to plausible. Twombly, 550 U.S. at 570,

127 S. Ct. at 1974; Consumeraffairs.com, 591 F.3d at 256.

## III. Analysis

## A. Plaintiff's Negligence Claim

In Count One, Plaintiff asserts a negligence claim based on three distinct theories of recovery: (1) manufacturing defect, (2) design defect, and (3) failure to warn. Because each of these claims are a product liability action, they are governed by North Carolina's Product Liability Act. See N.C. Gen. Stat. § 99B-1 (defining "product liability action" to include any action brought to recover for personal injury resulting from the manufacture, design, or warning of any product); Moore v. Coachmen Indus., Inc., 499 S.E.2d 772, 777 (N.C. Ct. App. 1998). The Court will address each of Plaintiff's theories of recovery in turn.

### 1. Plaintiff's manufacturing defect claim

Where a plaintiff asserts a products liability claim based on a design or manufacturing defect, he or she must prove that: (1) the product was defective when it left the defendant's control; (2) the defect was the result of defendant's negligence; and (3) the defect was the proximate cause of plaintiff's damages. Red Hill Hosiery Mill, Inc. v. Magnetek, Inc., 530 S.E.2d 321, 326 (N.C. Ct. App. 2000); Carlton v. The Goodyear Tire & Rubber Co., 413 F. Supp. 2d 583, 588 (M.D.N.C. 2005); Snoznik v. Jeld-Wen, Inc., No. 1:09cv42, 2010 WL 1924483, at

*21-22 (W.D.N.C. May 12, 2010) (Reidinger, J.); see also N.C. Gen. Stat. § 99B-6. "Under a claim based on negligence, a manufacturer has the duty to use reasonable care throughout the manufacturing process, including making sure the product is free of any potentially dangerous defect in manufacturing or design. This duty of care may involve inspection or testing of the product . . . ." Red Hill Hosiery, 530 S.E.2d at 326 (internal citation and quotation omitted).

Here, Plaintiff alleges that Defendant's product that her son consumed was defective because it contained the bacteria Enterobater Sakazakii, which caused his meningitis. (Pl.'s Second Am. Compl. ¶¶ 10, 25, 32.) Plaintiff further alleges that the bacteria entered Defendant's product prior to leaving Defendant's control as the result of Defendant's failure to take reasonable steps during the manufacturing process to prevent contamination of its product. (Id. ¶¶ 26, 33-43, 71.) These factual allegations are sufficient to state a products liability claim under North Carolina law; the Second Amended Complaint contains factual allegations that the product was defective, that the defect was the result of Defendant's failure to take reasonable care to prevent the defect, and that the defect proximately caused the injury to S.A.S. See Red Hill Hosiery, 530 S.E.2d at 326; Carlton, 413 F. Supp. 2d at 588; Snoznik, 2010 WL 1924483, at *21-22; see also Horne v. Novartis Pharms. Corp., 541 F. Supp. 2d 768783-85 (W.D.N.C. 2008) (Reidinger, J.). Finally, the

Court is not persuaded by the opinions of the United States District Court for the

District of Minnesota, <u>Burks v. Abbott Labs</u>, 639 F. Supp. 2d 1066 (D. Minn.

2009); <u>Burks v. Abbott Labs</u>, No. 08-3414, 2010 WL 1576779 (D. Minn. Apr. 20,

2010), addressing similar claims under Louisiana law.  Here, the factual allegations

in the Second Amended Complaint state a claim for a manufacturing defect under

North Carolina.  Accordingly, the Court **RECOMMENDS** that the District Court

**DENY** the Motion to Dismiss as to the manufacturing defect claim.

> 2.     <u>Plaintiff's design defect claim</u>

Similarly, the Second Amended Complaint states a claim for a design defect

under North Carolina law.  In addition to the factual allegations discussed with

regards to Plaintiff's manufacturing defect claim, Plaintiff also alleges the

existence of two safer alternatives to Defendant's powered infant formula.  First,

Plaintiff alleges that treating the finished powered infant formula with a biocide

would decrease the risk of bacterial contamination in Defendant's product.  (Pl.'s

Second Am. Compl. ¶ 40.)  For purposes of ruling on Defendant's Motion to

Dismiss, the Court finds that the addition of a biocide to Defendant's product could

constitute a reasonable alternative design.  <u>See</u> <u>The Sec. Nat'l Bank of Sioux City,</u>

<u>Iowa v. Abbott Labs.</u>, No. 11-cv-4017-DEO, 2012 WL 327863, at *9-12 (N.D.

Iowa Feb 1, 2012).  Similarly, sterile liquid infant formula could constitute a

plausible, reasonable alternative to Defendant's design.   (Pl.'s Second Am. Compl.

¶ 46-48.)   Defendant's factual argument that liquid infant formula is not an

alternative design but an entirely different product is a question of fact best

resolved at the summary judgment stage based on the evidence in the record.

While Plaintiff will ultimately have to introduce evidence that these alternate

designs are a safer, practical, feasible, and reasonable alternative design to

Defendant's powered infant formula, these are all questions for summary judgment

because the Second Amended Complaint contains plausible, factual allegations

supporting each of the elements of a claim for a design defect.[1]   Accepting the

plausible, factual allegations as true, the Second Amended Complaint states a

design defect claim against Defendant, and the Court **RECOMMENDS** that the

District Court **DENY** the Motion to Dismiss as to the design defect claim.

### 3.      Plaintiff's failure to warn claim

---

[1]  Defendant's reliance on Dewitt v. Eveready Battery Co., Inc., 550 S.E.2d 511 (N.C. Ct. App. 2001), for the proposition that Plaintiff must plead detailed factual allegations regarding the feasibility of the proposed alternatives is misplaced as DeWitt did not, as Defendant represents to the Court dismiss a design defect claim for failure to allege facts related to the practicality, feasibility, or relative safety of an alternative design.  Rather, the Court in DeWitt held that the trial court properly granted *summary judgment* for the manufacturer of a product because the plaintiff failed to *present evidence* from which a jury could determine that the manufacturer unreasonably failed to adopt an alternative design. 550 S.E.2d at 519.  Here, Plaintiff has plead factual allegation supporting each element of her claim; no more is required.  Finally, the Court will assume that Defendant's misrepresentation as to the holding of Dewitt was not intentional. The Court, however, reminds counsel of their obligations under Rule 11 of the Federal Rules of Civil Procedure, as well as their duty of candor to the Court.  See United States v. Shaffer Equip. Co., 11 F.3d 450, 457-458 (4th Cir. 1993).

Plaintiff asserts a claim based on negligence as a result of Defendant's alleged failure to provide an adequate warning of the potential danger associated with feeding Defendant's powered infant formula to a neonate.  "A manufacturer must properly inform users of a product's hazards, uses, and misuses or be liable for injuries resulting therefrom under certain circumstances." Smith v. Selco Prods., Inc., 385 S.E.2d 173, 175 (N.C. Ct. App. 1989); Edwards v. Atro SpA, 89 F. Supp. 1074, 1077 (E.D. N.C. 1995); Fontenot v. Taser Int'l, Inc., No. 3:10cv125-RJC-DCK, 2011 WL 2535016, at *6 (W.D.N.C. Jun. 27, 2011) (Conrad, C.J.); Snoznik v. Jeld-Wen, Inc., 2010 WL 1924483, at *22 (W.D.N.C. May 12, 2010) (Reidinger, J.).  Moreover, a manufacturer has a continuing duty to provide a warning to the users of its product where it learns of a dangerous propensity of its product after the time of sale.  Smith, 385 S.E.2d at 176-77; Edwards, 891 F. Supp. at 1077.

Plaintiff's inadequate warning claim is governed by N.C. Gent. Stat. § 99B-5, which provides that no manufacturer of a product shall be liable based on a claim for inadequate warning unless the plaintiff proves: (1) that the manufacturer acted unreasonably in failing to provide a warning; (2) that the failure to provide an adequate warning was the proximate cause of the plaintiff's harm; and (3) that the manufacturer knew or should have known that when the product left its control

that without an adequate warning the product created an unreasonably dangerous

condition that posed a substantial risk of harm to a reasonably foreseeable

consumer or that the manufacturer became aware of the substantial risk of harm

after the product left its control.  N.C. Gen. Stat. § 99B-5(a);  Snoznik, 2010 WL

1924483, at *23; see also DeWitt v. Eveready Battery Co., Inc., 550 S.E.2d 511,

520 n.6 (N.C. Ct. App. 2001) (holding that negligence claim based on inadequate

warning governed by N.G. Gen. Stat. §99B-5); Fontenot, 2011 WL 2535016, at *6

(same).

      As a threshold matter, Defendant's contention that a failure to warn claim

can only be based upon an identified "characteristic" of Defendant's powered

infant formula is without merit as Defendant reads Ziglar v. E.I.Du Pont De

Nemours and Co., 280 S.E. 2d 510, 513 (N.C. Ct. App. 1981), far too narrowly.[2]  A

manufacturer must provide a warning to consumers of any known dangerous

propensity or unreasonably dangerous condition associated with its product,

provided that the danger is not an open and obvious risk that is a matter of

common knowledge; the duty to warn it not solely limited to a "characteristic" of

the product.  N.C. Gen. Stat. § 99B-5(a), (b); Nicholson v. Am. Safety Util. Corp.,

476 S.E.2d 672, 676 (N.C. Ct. App. 1996) ("A manufacturer is under an obligation

---

      [2]  In fact, the Court in Ziglar even uses the terms characteristic and propensities
interchangeable in the decision.  280 S.E.2d at 513-14.

to provide warnings of any dangers associated with the product's use . . . ."); Bryant v. Adams, 448 S.E.2d 832, 841-42 (N.C. Ct. App. 1994); Smith, 385 S.E.2d at 175; Delta Marine, Inc. v. Whaley, 813 F. Supp. 414, 418 (E.D.N.C. 1993); Snoznik, 2010 WL 1924483, at *22.

The Second Amended Complaint contains factual allegations supporting each element of a failure to warn case. Plaintiff alleges that in 2004 Defendant knew that its powered infant formula may contain the bacteria Enterobater sakazakii, that this bacteria posed a series risks to neonates, and Defendant had a duty to warn consumers of this risk. (Pl.'s Second Am. Compl. ¶¶ 53-55.) Plaintiff further alleges that Defendant failed to provide any warning of the associated risk of feeding its product to a neonate (Id. ¶¶ 20, 56-58), that Plaintiff's son suffered serious injury as a result the presence of the bacteria in Defendant's powered infant formula (Id. ¶¶ 12, 25), and that had the product contained a warning of the risk associated with feeding Defendant's product to neonates, Plaintiff would not have used the product and, thus, not contracted meningitis (Id. ¶¶ 21, 23, 25-26). This is all that is required to state a claim under Rule 8 of the Federal Rules of Civil Procedure because Plaintiff has pled factual allegations supporting each element of her claim. See generally Nicholson, 476 S.E.2d at 676; Fontenot, 2011 WL 2535016, at *6; Burks, 639 F. Supp. 2d at 1016-17; Security

Nat. Bank, 2012 WL 327863, at *13. Accordingly, the Court **RECOMMENDS** that the District Court **DENY** Defendant's Motion to Dismiss as to Plaintiff's failure to warn claim.

### B.     Plaintiff's Breach of Warranty Claims

Counts Two, Three, and Four of the Second Amended Complaint assert claims for breach of express warranty and breach of implied warranty under the North Carolina Uniform Commercial Code ("UCC").  As an initial matter, Article 2 of the UCC only governs the sale of goods.  See Alpiser v. Eagle Pontiac-GMC-Isuzu, Inc., 389 S.E.2d 293, 294 (N.C. Ct. App. 1990); Smith v. Cent. Soya of Athens, Inc., 604 F. Supp. 518, 523 (E.D.N.C. 1985).  N.C. Gen. Stat. § 25-2-102. "A 'sale' consists in the passing of title from the seller to the buyer for a price." N.C. Gen. Stat. § 25-2-106(1).  "[P]rice can be made payable in money or otherwise." N.C. Gen. Stat. § 25-2-304(1); see also Parks v. Alteon, Inc., 161 F. Supp. 2d 645, 648 (M.D.N.C. 2001).  Accordingly, a threshold requirement of a claim for breach of express or implied warranty under the UCC is a showing that the transaction at issue involves the sale of goods and, thus, comes within the reach of the UCC.  See generally, Alberti v. Manufactured Homes, Inc., 329 N.C. 727, 732 (N.C. 1991) (holding that the sale of a mobile home is a "transaction in goods" and subject to the provisions of the UCC); Singletary v. P & A Invs., Inc., 712

N.C. App. 681, 684-85 (N.C. Ct. App. 2011); <u>Parks</u>, 161 F. Supp. 2d at 648-50.

Plaintiff did not purchase any of the powered infant formula at issue in this dispute; she did not receive the formula in exchange for anything. Instead, the hospital where S.A.S. was born and Plaintiff's physician gave Plaintiff free samples of the formula. (Pl.'s Second Am. Compl. ¶ 9.) Moreover, Defendant provided these samples to the hospital and physician for free.[3] (<u>Id.</u> ¶¶ 9, 77, 90, 101.) Although the Second Amended Complaint alleges that the distribution of the free samples by Defendant was part of its "concerted marketing efforts to encourage penetration of the Similac brand and Similac brand loyalty in the infant formula market[,]" there are no factual allegations supporting the occurrence of any *sale* of goods between Defendant and either the hospital or physician. <u>See</u> <u>Batiste v. Am. Home Prods. Corp.</u>, 231 S.E.2d 269, 272 (N.C. Ct. App. 1977) (rejecting similar argument based on a drug manufacture's marketing efforts of providing free samples to a physician and finding that no sale of drugs occurred); <u>Allen v. Ortho Pharma Corp.</u>, 387 F. Supp. 364, 367-68 (S.D. Tex. 1974) (holding that the furnishing of samples of drugs was not a sale triggering the applicability of the Texas Business and Commerce Code). As the Second Amended Complaint

---

[3] Although the Second Amended Complaint alleges that Defendant provided the free samples to the hospital and physician in return for "consideration," such conclusory allegations are not entitled to any weight. <u>See</u> <u>Consumeraffairs.com</u>, 591 F.3d at 255.

makes clear, Defendant provided the hospital and physician with free samples of its product as part of Defendant's marketing campaign. At no point did the passing of title from a seller to a buyer for a price occur. <u>See</u> N.C. Gen. Stat. § 25-2-106(1). Thus, because no sale of goods occurred in this case, the North Carolina Uniform Commercial Code does not apply, and Plaintiff's breach of warranty claims are subject to dismissal. <u>See</u> <u>generally</u>, <u>Parks</u>, 161 F. Supp. 2d at 651 (dismissing breach of implied warranty claims against drug manufacturing where the sale of goods was not the predominant purpose of the transaction). The Court **RECOMMENDS** that the District Court **DISMISS** Counts Two, Three, and Four.

### C.    Plaintiff's Unfair or Deceptive Trade Practices Act Claim

In order to make out a *prima facie* claim for unfair and deceptive trade practices, a plaintiff must show that: (1) the defendant committed an unfair or deceptive act or practice; (2) that this act or practice was in or affecting commerce; and (3) that the act or practice proximately caused the plaintiff's injury. <u>Gray v. N.C. Ins. Underwriting Ass'n</u>, 529 S.E.2d 676, 681 (N.C. 2000); <u>Hospira Inc. v. Alphagary Corp.</u>, 671 S.E.2d 7, 12 (N.C. Ct. App. 2009); <u>Sessler v. March</u>, 551 S.E.2d 160, 167 (N.C. Ct. App. 2001); <u>Dealers Supply Co., Inc. v. Cheil Indus., Inc.</u>, 348 F. Supp. 2d 578, 591 (M.D.N.C. 2004). A practice is unfair if it "'is immoral, unethical, oppressive, unscrupulous, or substantially injurious to

customers.'" <u>Branch Banking and Trust Co. v. Thompson</u>, 418 S.E.2d 694, 699

(N.C. Ct. App. 1992) (quoting <u>Johnson v. Phoenix Mut. Life Ins. Co.</u>, 266 S.E.2d

610, 621 (N.C. 1980)); <u>Sessler</u>, 551 S.E.2d at 167. A practice is deceptive where it

has the tendency or capacity to deceive. <u>Thompson</u>, 418 S.E.2d at 699; <u>Sessler</u>,

551 S.E.2d at 167. Ultimately, however, "[w]hether a particular act is unfair or

deceptive, depends on the fact surround the transaction and the impact on the

marketplace." <u>Cheil Indus.</u>, 348 F. Supp. 2d at 591. As the Fourth Circuit has

explained, this is a "highly fact-specific inquiry." <u>South Atlantic Ltd. P'ship of</u>

<u>Tenn., L.P. v. Riese</u>, 284 F.3d 518, 535 (4th Cir. 2002).

Plaintiff alleges that Defendant violated the Unfair and Deceptive Trade

Practices Act through the use of false advertising and misrepresentations regarding

the safety of powered infant formula for neonates. (Pl.'s Second Am. Compl. ¶

14.) In 2004, Defendant advertised that its product was "a safe alternative to breast

milk" and "the formula promotes health immune-system development." (<u>Id.</u> ¶ 111-

12.) Plaintiff contends that these advertisements were false and misleading

because Defendant's knew of the dangers related to the potential contamination of

its product but failed to inform consumers that the product was not safe because it

might contain a bacteria that could seriously injure an infant. (<u>Id.</u> ¶¶ 53, 119.)

Fatal to Plaintiff's claim, however, is that the Second Amended Complaint

fails to contain factual allegations supporting an essential element of Plaintiff's claim - that these misrepresentations proximately caused the plaintiff's injury. <u>See generally</u> <u>Gray</u>, 529 S.E.2d at 681 (setting forth legal elements for an unfair and deceptive trade practices claim). Plaintiff alleges that "[t]he act or practice of falsely advertising and marketing that PIF was suitable, safe and effective for neonates with normal immune systems for their age created actual reliance by Plaintiff upon the representations of the Defendants and thus proximately caused the injury to S.A.S." (<u>Id.</u> ¶ 117.) Such allegations are insufficient to state a claim for unfair and deceptive trade practices because the Second Amended Complaint fails to allege that Plaintiff saw or read *any* of the allegedly false advertisements *prior* to feeding S.A.S. Defendant's production. Absent such factual allegations, Plaintiff cannot possibly demonstrate that the alleged false advertisements or misstatements proximately caused an injury to S.A.S. Accordingly, the Court **RECOMMENDS** that the District Court **GRANT** the Motion to Dismiss as to Count Five.

### IV.    Conclusion

The Court **RECOMMENDS** that the District Court **GRANT in part** and **DENY in part** the Motion to Dismiss [# 77]. The Court **RECOMMENDS** that the District Court **GRANT** the motion as to Counts Two through Five and **DENY**

the motion as to Count One.

Signed: June 19, 2012

_Dennis L. Howell_

Dennis L. Howell
United States Magistrate Judge

## **Time for Objections**

The parties are hereby advised that, pursuant to 28, United States Code, Section 636(b)(1)(c), and Rule 72, Federal Rules of Civil Procedure, written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within **fourteen** (**14**) days of service of same. **Responses to the objections must be filed within fourteen (14) days of service of the objections.** Failure to file objections to this Memorandum and Recommendation with the district court will preclude the parties from raising such objections on appeal. Thomas v. Arn, 474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111 (1986); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).